## CLARKE v. WEST, ET AL.

1. Although a statute allows an execution to be issued against the sureties upon an administration bond, upon the return of " no property" to one issued against the administrator upon a decree of the Orphans' court, yet it is erroneous for that Court to render a judgment against such sureties without suit. The execution does not conclude the parties, and they have the right to test the legal sufficiency of the bond, but the manner of so doing is not yet clearly settled.

2. When a judgment is rendered against sureties in a summary manner, as was formerly the case in this State, upon forthcoming bonds; or as was here irregularly rendered against the sureties on the administration bond, such a judgment is distinct and separate from, and cannot be connected with the previous judgment, by suing out a writ of error. When a writ of error is sued out in the names of the sureties, it only removes the judgment rendered against them.

3. The peculiar jurisdiction of the judge of the county or orphans' court, over the settlement of an insolvent estate, is dependant upon the administrator's report of its insolvency, and cannot be sustained without it. Nor can such a report be inferred or presumed from any recitals made by the court in its orders upon the subject.

4. The consequence of a report of insolvency, is to make the administrator of the estate the actor in the proceedings: the effect of it is to discharge him from the suits of the creditors who are then entitled to have the assets divided amongst them. The administrator is therefore bound to take notice of all the subsequent proceedings by the court in the settlement of the estate, and no notice to him of the time of settlement is necessary. Creditors are properly notified by publication in some newspaper for forty days, and the place is the court-house where the settlement is made by the judge, and need not be stated in the notice.

5. On the final settlement of an insolvent estate, it is the province of the judge to determine for what the administrator is chargeable, and if an improper charge is made, or he is held to account for assets not connected with the administration, or reduced into money, the question must be raised by an exception, and can appear in no other manner.

6. The sureties upon the general administration bond, are liable for the proceeds of lands sold by the administrator, although before he is allowed to receive such proceeds, he is required by statute to execute a special bond, conditioned for the faithful payment and application of the money. The last bond is considered merely as an additional security.

7. When a judgment is rendered against an administrator, upon a final settlement of an estate, reported insolvent, in favor of several creditors, all of them must be made parties to the writ of error sued out by the administrator, to revise the final decree.

Writ of Error to the Circuit Court of Butler county.

This was the final settlement of the estate of Henry West, deceased; and for the proper understanding of all the questions raised, an abstract of the entire record, is necessary.

Administration was granted on the estate of Henry West, deceased, by the county court of Butler county, on the 21st of August, 1837, to Margaret E. West, one of the defendants; and the others are her sureties on the administration bond.

On the 16th March, 1838, (in the record it is stated 1837, but the entire transcript shows the clerical error,) an order was made, "that the return of Margaret E. West, administratrix, &c. is sworn to, examined, approved of, and ordered to be recorded; declaring on her oath, that she believes the estate to be insolvent."

On the 22d of August, 1839, it appearing to the satisfaction of the court, that a sale of the land of Henry West, deceased, mentioned in the petition, is necessary to pay the debts of said deceased; and it also appearing that the said lands cannot be fairly, equally, and beneficially divided amongst his heirs at law. It is ordered, "that the said real estate of the said Henry West, deceased, viz: (here follows the description of two half quarter sections, and one quarter section of land in T. 7, R. 12, described as being in Butler county,) be sold at public auction at the court-house in Greenville."

The order then names three persons as commissioners, to make the sale, after giving a specified notice, on a credit of six months; and directs that the notes shall be made payable to the administratrix; and that the commissioners should return them, with a report of their proceedings, at the December term of said court.

The report of the insolvency of the estate, the petition for the sale of the real estate, the report of the commissioners relative to the sale, and the final order of the court thereon, if they have any existence, are not set out in the transcript.

On the 19th of October, 1840, this order was made: "Margaret West, administratrix, having heretofore made a report, that the estate is insolvent; it is therefore ordered that forty days notice be given by advertisement in the Alabama Journal, to be published weekly at Montgomery, that all persons having claims against the estate, file them with the clerk of this court, on or before the second Monday of December next; upon which day is

Clarke v. West, et al.

ordered that final settlement of said estate be made by the distribution of assets, &c." No proceedings seem to have been had under this order.

On the 2d of March, 1841, this order was made: " In the matter of the estate of Henry West, deceased. In this case, Margaret West, administratrix, having heretofore made a report that the estate is insolvent; it is therefore ordered, that notice be given by advertisement in the Cahaba Democrat, a newspaper, published in Cahaba, also in the Mobile Advertiser and Chronicle, published in Mobile, to be published once a week in each paper, for forty days; that all persons having claims against the said estate, shall file them with the clerk of this Court, on or before the second Monday in September next, upon which day it is ordered that final settlement of said estate be made by final distribution of assets, &c. It is also ordered in this case, that Margaret West, the administratrix, be required to come forward and make final settlement of said estate on the second Monday of September next, and that she have notice of this order, by publication for three weeks in the Alabama Journal, a newspaper published in Montgomery."

On the 13th September, 1841, the final settlement was made, and is contained in the following decree : " This being the day appointed for the final settlement of the estate of Henry West, deceased, which estate was reported insolvent by Margaret West the administratrix. On examining the returns made by the administratrix, it is found that assets to the amount of $8,589 08-100 including interest, have come into the hands of the administratrix ; and that the claims on file, and filed and presented against said estate, including interest, this day, amounts to 6565 76-100 dollars ; whereby it appears that said estate is not insolvent, but fully able to pay all the claims here presented ; and it appearing to the court that this settlement has been duly and legally advertised, as the law requires ; and the said Margaret E. West, administratrix of said estate, being solemnly called to come into court, came not, but wholly made default. It is therefore ordered and decreed by the Court, that the following creditors, whose notes, accounts and claims, have been acted on, allowed and passed, have and recover of and from the said Margaret West, administratrix as aforesaid, the several amounts opposite their names, respectively, viz: (Here follows a judgment in favor of each cre-

ditor for the sum allowed him, and amongst the names is that of the plaintiff in error, whose judgment is for 121 33-100 dollars.) And that execution in favor of each of the above named persons against the said administratrix, for the several amounts to them decreed ; returnable to this Court at the next November term. And it is further ordered and decreed that all claims against said estate, which were not this day presented for the action of the Court be hence barred : That the account current made up, approved and allowed this day, on this settlement, be recorded ; the vouchers or claims which were presented, acted on, and allowed, be filed, and that the assets remaining in the hands of the administratrix, after paying the above judgments or decrees, remain in said administratrix' hands, subject to a division amongst the heirs of said estate, on their application."

On the 15th November, 1841, the last order in the cause was made, and is in these terms : " Ordered, that inasmuch as on the 13th day of September last, there was a decree rendered up against Margaret E. West, administratrix on the estate of Henry West, deceased, to the amount of $6,565 76-100; which appeared to the satisfaction of the court, to be remaining due, and unpaid to the creditors of said estate, and executions having [issued] from the clerk of the court of this office, in favor of each creditor, for the amount which appeared to be due said creditors against said Margaret E. West, administratrix, &c., made returnable to this court on the third Monday in November then next; and all of the said executions having been returned to this court, with the following endorsement thereon, to wit: 'no property found in my county belonging to the defendant in execution, November 9, 1841— P. B. Waters, sheriff Butler county.' It is therefore ordered and decreed by the court, that the following creditors, viz :—(here they are severally named as in the last entry) whose accounts, notes and claims have been acted on, allowed and passed, have, and recover of, and from the said Margaret West, administratrix as aforesaid, and William Wallace, G. W. Shipp and Jeremiah Watts, her securities on her administration bond, the several amounts opposite their names respectively, to wit: (here the names of the several creditors, with the amounts recovered by them, severally, are stated, amongst which is the name of the plaintiff, who has judgment for $121 30-100,) and that executions issue."

On this judgment the defendants sued out a writ of error to the

Clarke v. West, et al.

Circuit Court, and there assigned the following grounds for its reversal.

1. Because there is no report of the insolvency of the estate.

2. The record does not show the estate was insolvent, there being no judgment of the County Court upon the insolvency.

3. All the proceedings under the report of insolvency were discontinued by operation of law.

4. There is no report of the sales of the land by commissioners; no obligation given for the purchase money to the administratrix; no bond given by her to apply the proceeds of the sales as is required by law.

5. No notice was given to, or had by the administratrix, of the account allowed on the final settlement, and no resistance offered to the claims presented.

6. Judgment is rendered against the administratrix.

7. Judgment was rendered against the plaintiffs in error, who are securities of the administratrix.

8. No notice was given to any of the plaintiffs in error.

9. Judgment was rendered against the sureties on the administration bond, for the amount of the land sales.

10. It is not shown that the administratrix had reduced the claims to money, nor the assets at the time of the decree.

11. No notice was given to, or had by the heirs at law.

The Circuit Court reversed the decree of the County Court, and remanded the cause. The plaintiff prosecutes his writ of error to reverse this judgment of reversal, and assigns,

1. That the writ of error should have been dismissed.

2. That the judgment should have been affirmed.

Cook, in support of the decision of the Circuit Court, argued that the proceedings in the County Court were irregular,

1st. Because no notice was given to the administratrix, nor was she present at the time of settlement. It is true that notice is not provided for by the statute, but it results from the nature of all judicial proceedings; the representative of the estate is the only one to contest the demands against it, and unless she was present the whole matter is a mere inquisition by the judge. Notice is necessary in all judicial proceedings. [Baylor v. McGregor, 1 S. & P. 158.]

2d. The record does not show any judgment of insolvency

rendered by the court, consequently it had no jurisdiction over the estate as an insolvent estate; neither does it appear what report was made by the administratrix. It may be, and most probably was, that she reported the *personal* estate as insufficient, and prayed a sale of the land. This idea is strengthened by the recitals in the order of the 22d August, 1839,—at all events, this record is too inconclusive to give a voluntary jurisdiction to the court.

3. If the jurisdiction assumed, did not arise out of the insolvency, it is clear that the whole settlement is irregular. [Porter v. Creagh, 4 Porter 332; Horn v. Grayson, 7 Porter, 270; Humphreys v. Morrow, 9 Porter, 283; 4 Mass. 620; 12 ib. 570; 17 ib. 380, 86; 15 ib. 323; Digest, 151, 152.]

4th. There is no pretence afforded by the record to charge the administratrix with the proceeds of the lands; it does not even appear that they were sold; besides, without an order confirming the sale, no title would pass to the purchaser; and if the money was improperly received by the administratrix, it would not be assets of the estate, but would be money received to the use of the purchaser. [Lightfoot v. Lewis, 1 Ala. Rep. N. S. 475.]

5th. Conceding that all the previous proceedings are free from error, the last judgment against the sureties is not warranted by law. [Digest 253, § 40.] It is true, execution may issue on the bond, after a return of no property, against the administratrix— the issuance of an execution will not preclude the parties from contesting their liability on the bond. Here, however, a formal judgment is rendered, either upon the bond, or without any foundation whatever. If it is a judgment on the bond, then it estops all further inquiry into its merits, for no *supersedeas* would lie; the execution being regular and in accordance with the judgment, though it may not be warranted by the bond. This is a sufficient reason why the judgment should be avoided, if on the bond; and if not, there is nothing to support it.

6. The sureties however, are not liable to the judgment to its full extent, because when the land was sold, the administratrix must have given a bond to account for the proceeds. The general administration bond does not contemplate a sale of lands, and although its terms would cover the case, the subsequent legislation shows that the general sureties for the administration are not liable. [Digest, 177, § 3, 181, § 20.]

J. B. Clark, *contra*—insisted,

1st. That the writ of error was irregular; it should have been sued out against all the creditors, as by a reversal of the judgment as to one, the unity of the proceedings will be destroyed. [Merrell v. Jones, 2 Ala. Rep. 192.]

2d. It is not essential there should be a judgment of insolvency by the County Court. If the administratrix has so represented the estate, she cannot complain, and the recitals in the decrees, are evidence of such a representation.

3. No mode of bringing an administrator before the court is prescribed, and therefore the court is authorised to give notice in such manner as it might direct, if notice is at all necessary. But whenever an estate is represented insolvent, the administrator is before the court, by his report, and is bound to take notice of all the proceedings consequent upon his report; by it he discharges himself from the common law actions, and it will not do to assert that the creditor is bound to pursue him.

4th. The jurisdiction arises out of the insolvency, and this is stated in both decrees ordering the final settlement. It is not material that the estate proves to be solvent, contrary to the belief of the administratrix, because the jurisdiction attaches on the representation, and cannot be subsequently divested.

5th. The court having jurisdiction to distribute the assets, must enquire what these assets are, and if the administratrix received the notes or money, for which the land was sold, she cannot be permitted to complain of her own irregularity. The court by its decree ascertains that she has received assets, and no exception is taken. In this view, the case is supported by the decision of Horn v. Grayson, [7 Porter, 270.]

6th. The decree against the sureties on the return of the execution against the administratrix, is only an award of execution, or rather is nothing more than the statute directs to be pursued; and the judgment ought not to be reversed for a more formal error. This judgment estops nothing, and the sureties have the same remedy by *supersedeas,* as they would have if the execution had issued on the bond without any order.

7th. The sureties for the administration are liable according to the terms of their bond, and full effect can be given to the subsequent act, which requires the administrator to give a bond, when he recieves the proceeds of land sold. [Digest, 189, § 16.] The

second bond is an additional security and may enure to the bene-
fit of the sureties of the first; but it is clear that the statute which
authorises execution against the sureties, contemplates the gener-
al sureties for the administration. [Digest, 252, § 37; 253, § 40.]

GOLDTHWAITE, J.—1. In the examination of this case, we
shall depart in some degree from the order of the argument, and
first consider that assignment of error which questions the cor-
rectness of the judgment rendered against the sureties.

If this is to be considered as the mere award of an execution,
having no effect on the rights of the sureties, and not as a judg-
ment, then the writ of error was improperly sued out, and should
be dismissed.   But we think it must be considered as a judgment,
because it has all the distinctive features of one; the facts are
set out by which it was induced, and the consideration of the court
upon those facts is, that certain persons therein named, recover of
certain other persons several sums of money.   If such a judgment
was rendered in any other State, and sought to be enforced in the
courts here, we should have no authority to look into the statutes
of that State to ascertain whether the judgment was warranted by
law.   The judgment would conclude such an examination.   Con-
sidering it with reference to our own course of practice we could
not supersede an execution issued upon it, if conformable to its
terms, for in such a case, it is evident the execution would be per-
fectly regular.   The statute which is supposed to warrant this
judgment, is in these terms: "whenever any execution shall have
issued on any decree made by the Orphans' Court, on final set-
tlement of the accounts of executors, administrators or guardians,
and is returned by the sheriff, 'no property found' generally, or as
to a part thereof, execution may, and shall forthwith issue against
the securities of the executor or administrator, or guardian.   [Di-
gest, 253, § 40.] Nothing is said of any power to render a judg-
ment, and the right of any surety to question his liability upon the
bond, exists as fully as if no execution was authorised.   The
mode of contesting this liability, is not yet clearly settled by the
decisions of this court; as hitherto, no case has been presented
involving the precise question.   The statute does not pretend to
conclude the rights of the sureties when allowing an execution to
run against them without a suit at law.   It merely imposes upon
them a necessity to avoid the effect of the execution by showing

that the bond is irregular, or not binding on them. The County Court, however, has undertaken to decide these questions by its judgment, and having no authority to do so in this summary manner, the judgment is erroneous, and that of the Circuit Court reversing it, was proper.

2. If this judgment against the administratrix and her sureties had been authorized by the statute, in a manner similar to that which once prevailed in relation to forth-coming bonds, it would not be competent for the sureties to review any supposed error in the decree against the administratrix. The judgments in such cases are distinct and separate; and cannot be connected in the same writ of error. This principle is in effect, the same as that decided in Livingston v. The steam-boat Tallapoosa; [9 Porter, 111,] Witherspoon v. Wallis, [2 Ala. Rep. 667.] The writ of error only attaches to the last judgment; and what we have already said, disposes of all the case that is properly before us; but as the suit, without some final decision upon its merits, most probably would return upon us by a writ of error, sued out by the administratrix, we deem it proper to examine the entire case, as it appears in the transcript.

3. It is urged that no foundation is shown to support the peculiar jurisdiction exercised; and it is supposed it can only arise when an estate has been adjudged, as well as reported insolvent.

Our statutes, although they leave no doubt with respect to the mode, by which an insolvent estate shall be closed, are not clear as to the manner of ascertaining the fact of insolvency. In our present compilation of statutes, the 28th and 29th sections of the act of 1806, [Laws of Ala. 327] seem to have been omitted.— These sections, it is true, indicate what the report of the administrator shall contain; but their directions seem necessary, only with a view to the sale of the real estate, and if they were now in force, would not relieve the case from its difficulty, which seems to be one inherent to the subject matter, arising out of the uncertainty of the investigation. The certainty that an estate is insolvent, can only be made apparent when it is finally closed. An administration would be a most hazardous business in many cases, if the administrator could not protect himself from judgments, when the assets were insufficient to pay the debts already ascertained. In most instances, the plea of *plene administravit* could not be interposed, because of the impracticability of reduc-

ing the assets to money, inasmuch as our statutes direct a sale on credit; and this, after the sale, involves a considerable period of time in the collection of the debts thus created. It was in view of these matters, that this court [in Woods v. McCann & Witherspoon, 3 Ala. Rep. 61,] held it to be the duty of an administrator to represent the estate insolvent, whenever he has reason to believe the personal estate is insufficient to pay all the debts; and that such representation would abate all suits then pending against him. The effect then, of the report of insolvency, is to divest the courts of law of jurisdiction of suits against the administrator; under the statute, a peculiar jurisdiction is conferred on the judge of the county court, and is divided into two branches: first, to distribute the estate rateably between all the creditors; and second to decree a sale of such portion of the realty of the decedent, as will be sufficient to make up the deficiency of personal assets. [Digest, 151, § 2.]

Our business now is with the first branch of this jurisdiction. With this it seems the heir has nothing to do, as he has no interest whatever in the estate, until all the debts are discharged. It is true that the sections of the act just referred to, give the heir the right to contest the insolvency; and so also, does the subsequent act of 1822; [Digest, 180, § 16] but this right does not arise unless it is necessary, and an attempt is made by the administrator to obtain a decree for the sale of lands. Whatever is a matter of doubt upon this subject, under the act of 1806, is removed by that of 1821, [Digest, 154, § 7,] which provides, "When the estate of any testator or intestate shall be reported insolvent, it shall be the duty of the judge of the county court to audit and determine on the accounts relating thereto, according to the regulations prescribed for commissioners in such cases." From these statutes we infer that the peculiar jurisdiction with respect to an insolvent estate, rests entirely upon the report of the administrator, disclosing the insolvency. It is not necessary to do more than notice, the distinction between this and the cases of Wyman v. Campbell, [6 Porter, 219,] and Couch v. Campbell, [ib. 262.] Here the question arises on the decree itself, which in those cases was sought to be *collaterally* impeached.

The report of insolvency does not appear in the record, and without it all the proceedings of the county court, treating this as an insolvent estate, are irregular, and subject to be reversed on a

Clarke v. West, et al.

proper writ of error. The recitals of the report, in the various orders, cannot control this defect (if it is thus defective, in point of fact,) because the act of the court cannot create its own jurisdiction, which, as already shewn, arises only out of the act of the administrator. The report is the only evidence of what it contains, and cannot be ascertained by the consideration given to it by the court.

4. It is next insisted, that the subsequent proceedings in respect to the settlement of the estate were erroneous, because the administratrix had no legal notice of the time and place of settlement. Waiving the consideration of the minor question, as to the manner of giving the notice, we are of opinion she was entitled to none ; or rather, that she is to be charged with notice of all proceedings subsequent to her report. The consequence of a report of insolvency, is to make the administrator an actor in the proceedings ; the effect of it is to discharge him from the suits of the creditors; and when it is made they are entitled to have the assets divided amongst them. The action of the court is invoked by the administrator, and he is bound to take notice of all subsequent proceedings, until the closing of the estate by the final decree of settlement and distribution. Standing in this attitude to the proceedings, it is evident the administratrix cannot object that the creditors have had no sufficient notice, or of any other irregularities affecting them. In this view, the order of the court, on the 2d March, 1841, seems perfectly regular, so far as they are connected with it. The creditors are notified to file their claims in the manner which the law allows ; the day of the final hearing is named, and the place necessarily is the court-house of the county, as the judge of the court himself determines upon the claims. It is only when commissioners are appointed that a different place is allowed (if it even then is) than the court-house.

5. It is said there is no pretence afforded by the record, to charge the administratrix with the proceeds of the sales of the land, and that it does not appear that the assets were reduced to money.

It is evident that there can be no distribution of the assets between the creditors until the amount of those assets are ascertained. From this results the necessity, that the judge of the county court shall determine for what the administratrix is chargeable. If an improper charge is made, or the administrator is held to

account for assets not connected with the administration, or reduced into money, the question must be raised by an exception, and can, indeed, appear in no other manner. [Horn v. Grayson, 7 Porter, 270 ; Douthitt v. Douthitt, 1 Ala. Rep. N. S. 594.]

We may remark also, that it may have appeared to the court, with respect to the notes given for the sales of the land, that the administratrix had received the same under the order of the court, as required by statute. (Digest, 181, § 20.)

The regularity of these proceedings is a matter between the heir at law and the administrator ; and the record of the order of sale is not so immediately connected with the administratrix as to require that it should be insisted on in the transcript. Certain it is, that the administratrix could assign no error upon it in a contest with the creditors.

If no final decree was made by the court, confirming the sale of the lands, the title is not divested from the heirs, supposing the proceedings for the sale to have been under the act of 1822,— [Lightfoot v. Lewis, 1 Ala. Rep. N. S., 475,] and it may admit of doubt, if the administratrix received the money on the notes, without such final decree, whether it would be assets of the estate. But this is a question which we decline to give any opinion upon, as it is not sufficiently presented for adjudication.

6. The only matter not yet examined, is that which relates to the liability of the securities for the proceeds of the land sold or supposed to be sold under the order of the Court.

It may be remarked that it does not appear whether any additional bond was given by the administratrix when she received the proceeds of this sale ; in such a case, if there was no remedy on the administration bond, there would be no security at all; but we think a brief examination of the several statutes, will be satisfactory to show that the general administration bond covers, and is intended to cover, all the duties of an administrator. By the act of 1821, [Digest, 177, § 3,] the condition provided for the bond is, that the administrator shall well and truly perform all the duties which are, or may by law be required of him as administrator. It is certain that the chief duty of an administrator is to account faithfully for all the assets which came to his hands ; and therefore the failure to pay out these assets, is a breach of the condition. But it is said that other statutes contemplate that other bonds shall be given when a sale of real estate is decreed ; and

Clarke v. West, et al.

that is a duty which the sureties do not stipulate for, inasmuch as it is provided for by other and express enactments.   Thus the act of 1806, [Digest, 181, § 22,] directs that every executor, &c. empowered by the orphans' court, &c., to sell lands, &c., of any testator or intestate, &c., shall, before he obtains the order of sale from the office of the register or clerk, enter into bond with sufficient securities, to the chief justice of the orphans' court of the proper county, that he will observe the rules and directions of law, for the sale of real estate by executors, &c., and that he will well and truly account for the proceeds of such sale, and that the same shall be disposed of agreeably to law.   And the act of 1822 expressly prohibits the administrator from receiving the bonds or money returned by the commissioners, until he shall enter into bond and security, conditioned for the faithful payment and application of the money, arising from such sale, according to the final decree.   [Dig. 181, § 20.]   Although this matter is not free from doubt, we think it must be considered that the legislature by these different provisions intended merely to provide additional securities ; and did not intend to limit the liability of the sureties on the administration bond, merely to the personal assets.   This conclusion is strengthened by the circumstance that no reference is made to the bond to be given for the sale of the real estate, by the statute which authorizes an execution against the sureties.— [Digest, 253, § 40.]

7.  If the administratrix in this case had sought to reverse the final decree, all the creditors in whose favor judgments were rendered, would have been necessary parties to the writ of error, under the influence of the decision in Merrell v. Jones ; [2 Ala. Rep. 192] for in no other way could the unity of the proceedings be preserved ; it being evident that the same course which would authorize a reversal as to one creditor, must avoid the judgment as to all, or so change its amount as to render it impracticable to render complete justice to all the parties.

Our conclusion as to the case, is sufficiently obvious, without a recapitulation.   The judgment of the Circuit court is affirmed. The clerk of the court will so make his entry, as to refer to the last judgment rendered by the county court, upon the bond, and must omit the remanding of the case, as no further proceedings can be had in the county court, other than to issue execution according to the statute, unless the administratrix shall supersede the judgment against her.