## SHADDEN vs. STERLING'S ADMR'S.

1. A writ of error does not lie from the refusal of a probate judge to proceed with the settlement of the accounts of an administrator of an insolvent estate, to which he had been cited by a creditor, and his dismissal of the citation ; if the judge improperly dismisses the citation and refuses to proceed, *mandamus* lies to compel his action.

2. After an estate is reported insolvent, the only vouchers for money paid out that can be allowed on settlement with the administrator are for the "last sickness and necessary funeral expenses," ( Clay's Digest 192 § 2;) and if the court, on due notice to the creditors, states an account, giving the administrator credit for "receipts, vouchers and allowances" exceeding the amount of assets received by him, the settlement is unauthorized by law, and the administrator may be again cited by a creditor of the estate to settle his accounts.

ERROR to the Court of Probate of Benton.

The record shows that the defendants in error, Whiteside and Griffin, were appointed administrators of the estate of John K. Sterling, deceased, in August, 1836, and that they returned an inventory of the estate in October of that year. On the 4th January, 1838, they reported the estate insolvent, which report was received by the court, and ordered to be recorded. The next entry, dated January 6, 1838, recites that the administrators had that day filed their accounts and vouchers for final settlement, and thereupon the court ordered publication to be made for forty days in the " Jacksonville Republican," requiring all persons interested in said estate to appear, &c., on the first Monday in March then next, " to show cause why said accounts and vouchers should not be allowed." It does not appear that any account with the administrators was audited and stated at that time, or at any previous time.

The next entry in the record, dated March term, 1838, is in these words :

" Horatio Griffin and Moses Whiteside, administrators &c., in account with the estate of John K. Sterling, deceased.

Amt. of sale, bill, notes and accounts            $1309 98.
          Same Cr.

By receipts, vouchers and allowances filed in office $1328 50."
          (Signed)            " C. A. GUNN, Judge C. C."

Shadden v. Sterling's Adm'rs.

The next entry in the record, dated "in vacation, Oct. 31, 1848," is an order for a citation to the administrators, at the petition of James Shadden and John Crocheron, as creditors of said estate, requiring them to appear on Monday the 20th day of November then next, " and exhibit their accounts and vouchers as such administrators, that the same may be examined, audited and stated by the court for final settlement, according to the statute." It nowhere appears that the citation thus ordered was ever served on the administrators.

The next entry, dated November 20, 1848, recites that the administrators failed to file their accounts and vouchers on the day appointed, and it is therefore ordered that the clerk "re-issue" a notice to them, requiring them to file their accounts and vouchers for a final settlement on or before the 18th of December next.

The next entry was made on January 5, 1849, at which time it seems the administrators appeared and filed their accounts for final settlement; the first Tuesday in March next was set for "said settlement," and publication ordered for forty days previously.

At the appointed day in March term, 1849, " the court, having examined all the papers presented by said administrators for the purpose of making said final settlement, has come to the conclusion that said settlement cannot be made at this time, and it is therefore ordered that this case be continued until the next term of this court, it being the first Friday in April next."

At the April term, 1849, the settlement was continued over without day, to allow the administrators time to collect some debts due the estate.

The next entry, dated "in vacation, January 23, 1850," shows an order made on that day, "upon the petition of Mc-Campbell & Foster, attorneys for the creditors," requiring the administrators to appear on the second day of February next, and file their accounts and vouchers for final settlement.

" In vacation, February 6, 1850," as shown by the next entry, " came Moses Whiteside, one of the administrators," &c., " and filed his accounts and vouchers for final settlement ;" and an order was made, requiring all persons to appear and contest said settlement on the 22d March following, and for publication of the order forty days previously.

On the said 22d March, 1850, "came McCampbell & Foster, attorneys for James Shadden, one of the creditors," &c., and also came the administrators. Thereupon the administrator read to the court the entry of January 4, 1838, aforesaid, at which time the estate was reported insolvent, the aforesaid entry of January 6, 1838, and the aforesaid entry of March term, 1838. The administrators then proved, by the publisher of the "Jacksonville Republican," that the notice for such final settlement was published in said newspaper for six weeks previous to said March term, 1838; to which proof said Shadden, by his attorneys, objected, but the objection was overruled, and he excepted. "Upon this proof, on motion of said Griffin and Whiteside, the court refused to proceed further in the premises, and dismissed the citation;" to which also said Shadden excepted.

The action of the court in dismissing the citation and refusing to proceed further with the settlement, is assigned for error.— The defendants in error move to dismiss the writ of error. In the event the motion to dismiss shall prevail, the counsel for Shadden pray for a rule *nisi* against the probate judge, to appear and show cause why a *mandamus* should not issue requiring him to proceed with the settlement.

BELSER & RICE and JOHN FOSTER, for plaintiff in error:

1. The matter can be reviewed in this court without a bill of exceptions. The order of the court dismissing the citation is sufficient to authorize the review.—Clay's Digest 229 § 42 ; Ashley v. Ashley, 15 Ala. 17 ; Willis v. Willis, 16 Ala. 655.

2. A creditor of an estate may file his petition in the Orphans' Court to compel a settlement and distribution of the assets of the estate.—King v. Shackelford, 13 Ala. 435.

3. The judgment of the March term, 1838, and the report of insolvency, were not sufficient to authorize the dismissal of the citation.—Ashley v. Ashley, 15 Ala. 17 ; Crothers v. Heirs of Ross, 17 Ala. 816 ; Willis v. Willis, 16 Ala. 656 ; Clay's Digest 226 § 27.

4. The action of the Orphans' Court at the March term, 1848, was altogether *ex parte*, informal, irregular and inoperative.—Willis v. Willis, 16 Ala. 657, and cases cited.

5. A *mandamus* is asked for, to compel the probate judge to

act in the premises ; and this will be allowed, even if the writ of error is so defective that it cannot be amended.

J. B. MARTIN, *contra :*

1. The writ of error should be dismissed, because the refusal of the judge to proceed to a settlement is not such an order or decree as will sustain a writ of error.—Brennan v. Harris, 20 Ala. 185.

2. The writ describes a judgment which is not to be found in the record.

3. There is no judgment in the record.

4. The action of the court was void, being had in vacation.

5. The record does not sufficiently show that Shadden was a creditor, or, if a creditor, it is nowhere shown that his debt had been presented to the administrator, and he could not properly sue out a writ of error.—6 Ala. 166; 8 Ala. 177 ; 8 Porter 556.

6. All the creditors, or their names, should have been joined in the writ of error.—2 Stew. & P. 24 ; 7 Ala. 923.

7. The bill of exceptions is defective, in not appearing to have been signed as such in term time, and for the want of the judge's seal.—17 Ala. 143; 17 Ala. 700.

8. The report of insolvency gave the court jurisdiction of the estate as an insolvent estate, (Black's Creditors v. Black's Adm'rs, 20 Ala. 401 ;) and having obtained jurisdiction, its subsequent action, though abounding in irregularities which would reverse it on error, cannot pronounce it void.—6 Porter 262 ; *ib.* 219 ; 1 Ala. 708. The order or decree of March, 1838, was made by a court of competent jurisdiction, and was intended as a final disposition of the estate ; and however irregular, it must be sustained, until reversed by a direct proceeding. Elliott & Wife v. Mayfield, 3 Ala. 223 ; Sankey's Distributees v. Sankey's Adm'r, 18 Ala. 713. A balance being found in favor of the administrators, no other order than the one which appears could have been rendered, according to various decisions of this court.

If the estate has not been properly reported insolvent, the creditors had no right to proceed in the Orphans' Court; and if it has been legally reported as such, then all the creditors should have joined.

If the judgment is void, because rendered at a time when no court could be held, neither the appearance nor consent of the parties could give the court jurisdiction.

PHELAN, J.—The refusal of the probate judge of Benton to proceed with the settlement of the accounts of Griffin and Whiteside, as administrators of Sterling, to which they had been cited by him at the instance of Shadden, one of the creditors, and the dismissal of the citation, is neither an interlocutory nor final order or decree from which a writ of error will lie. The writ of error will, therefore, have to be dismissed.— The case is not unlike that of Brennan v. Harris, 20 Ala. 185.

But a *mandamus* is prayed for in this event, and we are called upon to examine the grounds upon which the refusal to proceed with the settlement is placed by the probate judge, in order to determine the propriety of this application.

The refusal to proceed is based upon the two entries found in the record : 1st. That of the 4th of January, 1838, by which it appears that the administrators reported the estate insolvent, which report was received and ordered to be recorded ; and 2d. That of March term, 1838, from which it appears that an account was stated with the Orphans' Court at that time, showing assets to the amount of $1309 98, and "receipts, vouchers and allowances" for a small amount over that sum, to-wit : $1328 50. This, together with the parol proof made March 22d, 1850, when the court refused to proceed further, that notice had been duly given by publication, previous to the statement of the account aforesaid in March, 1838, for creditors to appear for final settlement with the administrators at that term, makes the whole ground as shown by the record upon which the Probate Court dismissed the citation calling upon the administrators, at the instance of Shadden, to make a final settlement, and refused further to proceed.

The ground is not sufficient. The report of the insolvency of this estate, made by the administrators the 4th of January, 1838, and received by the court and ordered to be recorded, placed this estate in the care and jurisdiction of the court as an insolvent estate, to be settled up, and the assets distributed among the creditors accordingly.—West v. Clarke, 5 Ala. 117. The order then to be pursued, or, if nothing was done towards

a settlement until after the statute of 1843 (Clay's Dig. 192, *et seq.*) the order to be pursued after the passage of that law, will be found laid down in sundry decisions, (7 Ala. 923; 9 Ala. 925; 10 Ala. 915;) but more particularly in Steele v. Weaver, 20 Ala. 540, and Weaver v. Weaver, 20 Ala. 557.

We cannot find that anything was done to annul the report of insolvency which had been made, (even if that can be done in the same court;) and as long as that was in force, it was not in the power of the Orphans' Court, on a settlement with the administrators, to allow " receipts, vouchers and allowances," as it seems was done to the extent of $1328 50. The only vouchers for money paid out after a report of insolvency that can be allowed on settlement with the administrator, are for the "last sickness and necessary funeral expenses."— Clay's Dig. 192 § 2.

The settlement, then, or what purports to have been a settlement, with the administrators in March, 1838, if every thing else had been regularly done, which was not the case as far as this record discloses, was a settlement not authorized by law, because it was not conducted in the matter of allowing credits and vouchers as the settlement of an insolvent estate should be.

The case stands now, as it stood in 1838, as an insolvent estate under the care and jurisdiction of the Probate Court of Benton County, and it is the duty of the judge of that court, at the instance of any creditor or creditors, to cite the administrators to a settlement, and to proceed to final settlement with the administrators according to law; and when the amount in their hands liable to distribution is ascertained, to order distribution among the creditors as of an insolvent estate.

A rule *nisi* will be ordered to issue to the probate judge of Benton, in conformity with the foregoing views.