GILLASPIE, et al. *vs.* WESSON.

1. Where one undertakes to contract as an agent, and so contracts as to impose no legal obligation upon his principal—the agent is personally responsible.

2. In order to relieve a person assuming to act as an agent from personal responsibility, it is necessary that he should have been authorised to act, and that the credit should have been given to the principal—and there is no difference between the agent of an individual and the government.

3. And the signature of persons so contracting, without authority, as officers of the militia, in the public service, is merely a *descriptio personarum*.

4. An agent, when sued upon a contract made by himself, can only exonerate himself from personal liability, by shewing his authority to bind those for whom he has undertaken ;—and it is not for the plaintiff to shew the want of authority of the assumed agent : the agent, if he affirm his authority, must prove it.

5. The statute of this State, which authorises a discontinuance, in a case of defendants sued jointly, and who are not served with the writ, does not require that the declaration shall make a literal disclosure of the cause of action. It may be shewn by the indorsement on the writ, or the proof given at the trial, and it is quite enough if the cause of action appear from the *writ*, to be such as the *statute designates*, and the declaration be such, as to admit it *in evidence*.

6. If process, in assumpsit, issue upon a note against the maker, a declaration *for money had and received*, &c. will be sustained by the introduction of the note : so, a count, in debt, on a promissory note, charging, that defendant, purchased, from plaintiff, a horse, at a given price, to be paid on a day certain, will be sustained by the production of a note in writing, *to* that effect.

Error to the Circuit court of Lauderdale.

Gillaspie, et al. *vs.* Wesson.

Debt, on a written instrument, given for the purchase of a horse, tried before *Lane. J.*

One of the defendants sued in this case, not being served, plaintiff discontinued as to him, and declared against the other three.    To the declaration, defendants plead the general issue, and a special plea, setting forth that they were officers of the militia, ordered into service by the State Executive, against the hostile Creek Indians, and that the horse was purchased to meet the emergency, and on account of the government of the United States.    To the special plea, there was a demurrer; which being sustained, judgment was rendered on the remaining issue for the plaintiff.

The bill of exceptions stated, that the only evidence offered to sustain the action, was the written instrument, which was objected to by defendants, and the objection overruled.    Defendants then requested the court to charge the jury, that upon the issue of fact, upon the testimony, they must find for the defendants ;—which the court refused ;  and charged the jury, that the writing was sufficient to charge the defendants personally :  to which opinion, defendants excepted, &c.

Plaintiffs in error, assigned—

1. The court erred in admitting the instrument set forth in the bill of exceptions, as evidence.

2. In refusing the charge requested by defendants below.

3. In giving the charge excepted to.

4. In sustaining the demurrer to the plea.

5. In suffering such an oath to be administered to the jury.

Gillaspie, et al. *vs.* Wesson.

6. In rendering judgment for the plaintiff below.

7. In rendering judgment final on the demurrer.

8. In not holding the plaintiff's demurrer, (below,) to be a bar to his declaration.

*Hopkins*, for the plaintiffs, argued—that the plaintiffs in error bought the horse of defendant, for the Creek campaign. They made the purchase, as officers in that service, for the government, and were not personally bound—(1 Cranch, 345.) The supreme executive power was vested in the governor—(Aik. Dig. 218)—who was commander in chief of the army and navy, and militia of the State, and was to act in the service of the United States—(Ib. 219, sec. 6.) To take care that the laws were faithfully executed—(Ib. 219, sec. 10.) Congress have power to call forth the militia—(Ib. 308, sec. 14, 15,) It is the duty of the governor to call forth the militia, to repel invasions, &c.—(Aik. Dig. 309, sec. 3.) He cited also, Martin vs. Mott, (12 Wheat. 19.)

COLLIER, C. J.—The defendant in error caused to be issued, a writ, in debt, against the plaintiffs and William W. Garrard, returnable to the Circuit court of Lauderdale. The writ was executed on the plaintiffs, and returned not found, as to Garrard.

In his declaration, the defendant, reciting that process had not been executed on Garrard, as to him, discontinued his action, and declared against the plaintiffs in three counts. In the first two, the cause of action is stated to be a "written undertaking," entered into on the twenty-fourth day of May, eighteen hundred and thirty.

six, by which the plaintiffs and Garrard promised to pay the defendant, by the twenty-fifth day of December next thereafter, the sum of seventy-five dollars, in consideration of a horse sold the former by the latter.

The third count charged the plaintiffs, together with Garrard, of having purchased from the defendant, on the —— day of ——, eighteen hundred and thirty-six, a horse, at the price of seventy-five dollars, to be paid on the twenty-fifth day of December next thereafter.

The plaintiffs in error pleaded—1. *Nil debet ;* 2. A special plea, in which it is circumstantially alleged, that the executive of Alabama, did, on the sixteenth day of May, eighteen hundred and thirty-six, make a requisition on Major General Patterson, for —— companies of mounted infantry, to act against the hostile Indians belonging to the Creek tribe, with the least possible delay. That to enable a compliance with the requisition of the executive, Major General Patterson, did on the —— day of the same month, by his written order, directed to Brigadier General Garrard, (commanding the second brigade of his division,) by which he required him to furnish, so soon as practicable, two companies of mounted infantry, for the purpose designated in the order of the executive. And that in raising the *quota* of mounted men required of the second brigade, it was absolutely necessary to purchase some horses. To meet that emergency, and for no other cause, the plaintiffs, with Garrard, as officers of that brigade, did purchase the defendant's horse, and give him a certificate of purchase. The plea then concludes with a verification.

To the second plea, there was a demurrer, which be-

7 P.

ing sustained, the case went to the jury on an issue to the first, and a verdict was found for the defendant in error.

On the trial, a bill of exceptions was taken by the plaintiffs in error, from which it appears, that the only evidence offered, was a writing of the following tenor :

"BRIGADE HEAD QUARTERS,
Florence, 24th May, 1836.

"We have purchased of Claibourne W. Wesson, one horse, at the price of seventy-five dollars, which horse we have purchased on account of the United States, for volunteers now ordered to the Creek nation, as mounted infantry, from the second brigade of the militia of Alabama, to act against the hostile Creek Indians,—said sum to be paid by the twenty-fifth day of December next.

W. W. GARRARD,
Brig. Gen'l 2d Brigade.
J. W. GILLASPIE, Col. Com.
MICHAEL WALDROP, Capt.
J. W. POWERS, Lieut."

The admission of this evidence was objected to by the plaintiffs in error, but allowed to be read to the jury. The court being moved to instruct the jury, that upon the testimony, they must find for the plaintiffs in error, refused to do so, and instructed the jury, that the "*writing sued upon was sufficient to charge them personally.*"

Two questions have been made for the plaintiffs :

1. Is not the declaration defective, and should not the demurrer to the second plea have been visited upon it.

Gillaspic, et al. *vs.* Wesson.

2. Does the declaration or the written evidence read to the jury, disclose a personal liability by the plaintiffs in error?

First—Each count contains a sufficient cause of action. It is, however, insisted, that as the third count set forth a liability not embraced by the statute, which authorises a discontinuance against a defendant not served with process, the defendant in error, by ceasing to prosecute his suit as to Garrard, discontinued the action as to the plaintiffs.    The statute referred to is as follows:

"Whenever a writ shall issue against any two or more joint and several obligors, covenanters or drawers, of any such bond, convenant, bill, or promissory note, or against two or more of the defendants to any such joint judgment, it shall be lawful for the plaintiff or his attorney, at any time after the return of said writ or an *alias* writ, to discontinue such action against any one or more of the defendants, on whom such writ or *alias* writ shall not have been executed, and proceed to judgment against any one or more of said defendants on whom said writ shall have been executed, or proceed to issue an *alias* or *pluries* writ, at his election."

It will be observed, that the writ in the case before us, (as appears by its indorsement,) issued against the plaintiffs and Garrard, as the *joint* makers or " *drawers*" of a " *promissory note.*"   The statute does not require that the declaration should make a literal disclosure, of the cause of action, as it may be shewn by the indorsement on the writ, or the proof given at the trial.   It is quite enough, if the cause of action appear from the *writ* to be such as the *statute designates*, and the declaration be such as to

admit it *in evidence.* If process issue, in assumpsit, upon a note, against the maker, a declaration for *money had and received, &c.* would be sustained, by the introduction of the note. So, in the case before us, the third count might be made out, by the evidence that was offered.— There was then, no error in not sustaining the demurrer to the declaration.

*Second.*—Taking, as strictly true, every thing stated in the paper read to the jury, and there is no pretence for saying that the plaintiffs were government agents. Conceding that the first of the promisors was a brigadier-general of the second brigade of the militia of the State—the second, a colonel—the third, a captain— and the fourth, a lieutenant; that the second brigade had its *head quarters at Florence ;* that the purchase of the horse was made on account of the United States, for volunteers enlisted, as mounted infantry, to be marched *to the Creek nation, to* operate against the hostile Creek Indians;—and yet it will not appear, that the plaintiffs contracted as agents, or that the defendant was to look *alone* to the justice of the government for pay. It is well known, that the organization of the army of the United States does not permit the militia officers of a State, upon a requisition for troops from the War Department, to purchase such supplies as they may deem proper, or even indispensable. The only duty devolving upon them in such an emergency, is, to comply with the order making the requisition, either by accepting volunteers, or making a draft where a sufficient number cannot be found willing to offer their services. When the troops thus raised are placed under the con-

trol of the militia officers of the federal government, then, and not sooner, does the duty and authority of an officer of supplies, acting under that government, *directly* commence.

In order to relieve a person, assuming to act as an agent, from personal responsibility, it is necessary that he should have been authorised to act, and that the credit should have been given to the principal ; and there is no difference between the agent of an individual, and the government.—(Dusenbury vs. Ellis—3 Johns. Cases, 70 - Perkins vs. The Washington Insurance Company— 4 Cowen's R. 659 ; see also, 15 Johns. R. 1 ; 3 Caine's R. 69—1 Cowen's R. 513 ; 12 Johns. R. 444 ; 1 Cranch's R. 345.) So, if a person undertakes to contract, as an agent, and so contracts as to impose no legal obligation upon his principal, he, himself, is personally responsible. (Mott vs. Hicks—1 Cowen's R. 513 ; Sutherland's opinion, and cases cited by him.)

But, if the plaintiffs did not intend to assume a personal liability, why do they stipulate with the defendant, that " said sum (is) to be paid by the 25th December next ?"  No appropriation had then been made to defray the expenses of the Creek campaign; and it was quite uncertain whether any would be made by the day the defendant was to be paid.  In view of this circumstance, as well as an absence of all proof showing the plaintiffs' authority, we are constrained to consider their signatures as officers of the militia, as merely a *descriptio personarum.*

In Taft vs. Brewster, (9 Johns. R. 334,) the defendants executed a bond by the style of the " *Trustees of the*

*Baptist Society of the town of Richfield.*" The court held, that the bond was given in their individual capacities; and that the addition of trustees, &c. was a mere description of the persons. (See also, Thatcher vs. Dinsmore—5 Mass. R. 299; Foster vs. Fielder—6 Mass. R. 58; Wilkes, et al. vs. Back—2 East's R. 142; White vs. Cuyler—6 T. R. 176.)

Again: We think it clear, from an examination of the authorities, that *an agent, when sued upon a contract made by himself,* can only exonerate himself from *personal liability,* by showing *his authority* to bind *those for whom he has undertaken.* It is not for the plaintiff to show his want of authority by proof—by the contract, the defendant *has affirmed it,* and it is *incumbent upon him,* according to a well settled rule, to prove it—(1 Cowen's R. 536, by Sutherland, J.)

The facts disclosed in the special plea, do not, according to the principles we have laid down, constitute any available answer to the action; and the contract imposing a personal charge on the plaintiff, the demurrer was rightfully sustained.

The result of our opinion is, that the procedings in the Circuit court are regular, and its judgment must be affirmed.