WATTS ET AL. *vs.* GAYLE & BOWER ET AL.

1. A creditor may come into a court of equity against the executor *de son tort* of his debtor, to obtain satisfaction of his debt out of property which the debtor fraudulently conveyed, and which is in the possession of a person who cannot administer it as the rightful representative, being bound by the fraud of the intestate; and in such case, it is not necessary that the creditor should have exhausted his legal remedies, or should stand as a creditor with a lien.

2. As a general rule, all the obligors must be made parties to a suit in equity on an administrator's bond. A demurrer will lie to the bill if all are not made parties, unless a sufficient excuse is shown in the bill for the omission.

3. An allegation of the insolvency of those who are not joined, is a sufficient excuse for the omission.

4. The distributees of the estate are not necessary parties to a bill filed by a creditor against the executor *de son tort* of his deceased debtor, to reach property fraudulently conveyed by the debtor in his lifetime.

5. When the Orphans' Court has acquired jurisdiction of the settlement of an estate, by the report of insolvency, personal notice of the subsequent proceedings to the administrator, is unnecessary; he is considered the actor, and is held to notice of all subsequent proceedings.

6. A decree of the Orphans' Court against an administrator, rendered previously to the passage of the act of 1843, is equally conclusive upon him and his securities, both as to the claims allowed against the estate, and the assets in the administrator's hands; and the securities, in the absence of fraud, cannot litigate any question, except those which may arise upon the *factum* of the bond, or its legal sufficiency.

7. A party against whom a judgment at law is rendered by default, cannot obtain relief against it in equity, upon the ground that the attorney, whom he had retained to appear and defend the suit for him, failed to do so, and appeared for the opposite party, when the proof shows, that he had only requested the attorney to attend to any and all business for him, and had not mentioned any particular case.

ERROR to the Chancery Court of Lowndes.
Tried before the Hon. J. W. Lesesne.

This bill was filed by Gayle & Bower, *et al.* against the plaintiffs in error, as executors *de son tort* of Jeremiah Watts, deceased, who was one of the securities of Margaret West, on her bond, as executrix of Henry West, deceased. The bill charges, that Gayle & Bower held a claim against the estate of said Henry West; that said estate was reported insolvent; that their claim against it was allowed by the Orphan's Court, and a decree rendered in their favor against the administratrix, for the amount; that the other securities of the admin-

istratrix were insolvent; that Gayle & Bower assigned their claim to the complainant, Smith; that an execution was issued on the decree, and returned, "no property found." It also charges, that Jeremiah Watts, before his death, fraudulently conveyed his property, including sundry slaves, to his son, Thomas J. Watts; that said slaves were afterwards sold by Monroe Watts, under the directions of said Thomas J. Watts; and that there is no other property belonging to the estate of the said Jeremiah Watts. The bill prays for an account, and that said Thomas J. and Monroe Watts be decreed to pay the complainants' demand out of the money received from said sale.

The defendants, Thomas J. and Monroe Watts, insist, in their answers, by way of defence, that the said claim of Gayle & Bower, which is the foundation of the suit, was paid before the rendition of said decree by the Orphans' Court, against the administratrix of Henry West; and that their intestate, Jeremiah Watts, ought not to be concluded by said decree, because the said administratrix had no actual notice of the same. They also insist, that said decree ought not to be conclusive against their intestate, on the ground of accident, and state these facts to avoid it: that said Watts had employed an attorney to attend to said settlement for him, and to see that the same was properly made; and that said attorney, instead of appearing for said Watts, and representing his interest, appeared for said Gayle & Bower; that, at the time of said settlement, said Watts was prevented by sickness from attending in person, and also, that he was prevented, by mental derangement, from ascertaining and setting up his defence.

A demurrer was also filed to the bill, for want of equity, for want of proper parties, and on the ground that complainants had a full, adequate, and complete remedy at law.

The evidence shows, that the estate of Henry West was duly reported insolvent, and that notice of the settlement was given by publication. It also shows, that the execution against the administratrix was made returnable to the Orphans' Court, instead of a regular term of the County Court; that Margaret West was insolvent, as also those of her securities who are not made parties to the bill. The evidence upon the other points of the case appears in the opinion.

The Chancellor rendered a decree, upon the bill, answers, and testimony, referring it to the master to take an account of the amount due on the decree in the Orphans' Court, and of the estate in the hands of Thomas Watts, that the same might be condemned to the payment of said decree.

The decree of the Chancellor is here assigned for error.

LAPSLEY & HUNTER, and BOLLING, for plaintiffs in error:

1. The execution which issued from the Orphans' Court on the decree against the administratrix of West, having been made returnable to a day of the Orphans' Court, fixed no liability on Jeremiah Watts, et al., the securities of the administratrix. It is the same as though no execution had issued against the administratrix. Westmoreland v. Hale, 11 Ala. Rep. 127; Graham & Abercrombie v. Chandler, 12 ib. 829.

2. Before a suit, even, can be maintained against the securities of an executor or administrator, it must appear, that assets have been found in the hands of the latter, and that the money alleged to be due cannot be made. 3 S. & P. 263; ib. 348.

3. The security is liable, only when the remedy has been exhausted against the principal. 2 Dev. Eq. 115; 7 B. Monroe, 15. There should have been an execution returned, "no property," against the administratrix.

4. After the securities are liable to an action, they can only be charged, to the extent of the assets actually wasted. 11 Ala. Rep. 104. It was incumbent on the complainants, to have shown the value of the assets which came to the hands of the administratrix of West. Evidence of the decree is not sufficient, *especially* when it is also shown that the estate is not able to pay it.

5. If the Orphans' Court decree was not void for want of notice, it was clearly only *prima facie*, as there was no personal service on any one. 2 Stew. Rep. 399; 2 ib. 445; ib. 124; ib. 280; 4 Cow. 292.

6. The surety was mentally and physically unable to defend, and for that reason, is not concluded by the decree against the administratrix. To show this, we hold, 1st, That he had the right to defend, and his liability upon the Orphans' Court decree depends upon that right. 2. That the imbecility is a

good ground to open the judgment, to let in evidence of payment by the administratrix before its rendition. 1 Brock. 33.

7. Independent of this, there was such accident as will open the judgment, as to Jeremiah Watts. The accident was,. that his counsel, by an oversight, appeared in the Orphan's Court against him, instead of for him. This is clearly sufficient, of itself, but, combined with the imbecility, places the matter beyond doubt. It was in the nature of a fraud in Gayle & Bower, to press their whole demand and get a decree for all, under the peculiar facts of this case.

8. If proof is let in as to payments before the decree in the Orphans' Court, then the evidence of Smith shows, that the debt, or nearly all of it, has been paid. The amount of Smith's notes, for property purchased at the sale, went in payment of the debt.

9. The complainants cannot maintain the present bill. There is no equitable lien; no judgment against Jeremiah Watts. 7 Ala. Rep. 319, and authorities there cited. There is yet no debt against Jeremiah Watts. *Quere?* Can the bill be sustained, under the statute? The proceeding should have been against the assets of the estate of West. It starts out with the idea, that there is a debt against Jeremiah Watts, to the amount of the decree, and seeks to collect the assets of Jeremiah Watts out of the defendant, T. J. Watts, by making him an executor *de son tort*. If the complainant is correct in this, the heirs or distributees of Jeremiah Watts should have been made parties. 16 Ala. Rep. 233.

GEORGE W. STONE, *contra:*

1. The decree against Mrs. West, the administratrix, being a judgment, clearly fixes her liability, and the extent of it. Our statutes and decisions make the decree equally conclusive against her sureties, except as to the *factum* of the bond, and their legal liability on it. On all other grounds, they can make defence only through their principal. 4 Ala. Rep. 417; ib. 693; 5 ib. 67; 6 ib. 826; 20 Pick. 58; 9 Ala. 42.

2. Such creditor, or even a creditor at large in many cases—and this is one of them—may file a bill for the discovery and administration of assets; and, obtaining the discovery, the court will proceed to decree payment. 11 Ves. 29;

4 Johns. Ch. 619; 8 Por. 380 ; 9 Ala. 391; 15 ib. 91; 13 ib. 140; 3 Littell, 427; 1 Sim. & Stu. 206.

3. In cases like the present, a bill for such object will equally lie against an executor *de son tort.* 9 Leigh, 79; 7 Sim. 172; 10 Con. Eng. Ch. 1; 8 Por. 271; 3 Lit. 427; 6 Johns. Ch. 132; 2 Rand. 384.

4. The defendants have made themselves executors *de son tort.* 1 Lomax on Executors, 77; 5 Ala. Rep. 31. And even if there were a rightful executor, he could not recover the assets; and hence our right to proceed in this form is clear. 6 Ala. 367; 2 Rand, *supra.*

5. The decree or judgment is conclusive against Mrs. West and her sureties, and cannot be set aside, or reheard in equity, unless the Wattses have averred, and *proven,* that they were prevented from making the defence by accident, unmixed with negligence, or the fraud of the opposite party. Is that species of accident which is unmixed with negligence, shown here? 6 Por. 24; 7 ib. 549; 1 Ala. Rep. 351; 3 ib. 521; 14 ib. 345; 2 Hen. & Munf. 139; 2 Story's Eq. Jur. §§ 887–888–896; 1 Sch. & Lef. 201 ; 6 Johns. Ch. 479; 3 Johns. Ch. 351.

6. And it is not enough, to show a right to have the case reheard, on the ground of accident or fraud. It must also appear, that the decree is inequitable and unjust. 2 Munf. 1; 8 Ala. 770.

7. The other ground of defence is, the mental imbecility of Jeremiah Watts. The law knows no middle ground between sanity and insanity, or capacity and incapacity to do binding acts. Unclouded intellect is not required. If the party have sufficient intellect to attend to his ordinary affairs, it is enough. 5 Ala. Rep. 81; 11 ib. 87; 11 Ves. 11; 5 John. Ch. Rep. 148, 161; 4 Cow. 207; 1 Jarman on Wills, note, (1st ed.) 27; 1 Phil. 100; 1 Jarman on Wills, 31; 9 Pick. 212.

8. Neither of these grounds of defence can derive any support from the other. Each must stand by itself; and if neither is sustained, both must fail.

9. We contend, that neither of these defences is made out; but if the court should think either one proven, then we say no injury has been shown. The testimony of Smith is contradicted in many important particulars, and is incredible.

Moreover, it is not shown, if Gayle & Bower did receive these notes, that they were a payment on the decree in this case. The presumptions are in favor of the correctness of the judgment; and the onus lies on the Wattses, to show, that they were received on the indebtedness which was the foundation of the decree of the Orphans' Court.

10. It was not necessary for us to prove the correctness of our account. The onus was on the other side to disprove it. Yet we have taken the testimony of Hayne & Miller to establish it, by proving the handwriting, and correct dealings of the deceased clerk, who made the entries. 9 Por. 289; 4 Ala. 371; 8 ib. 519.

11. As to the transfer of the judgment, either partner, while the firm continues, or the continuing partner, after the dissolution, is authorized to transfer the firm effects in payment of its debts. 3 Paige, 523; 15 Ala. Rep. 34.

12. The Wattses, in attempting to attack our decree, are forced to become actors, and to pray for relief. This, they cannot do without a cross bill. Story's Eq. Pl. §§ 430–431– 425–429; McLemore v. Mabson, at this term.

13. Our bill is well filed under the statute, and is good, independent of it. Pamph. Acts, 1844, 107; 10 Ala. 436; 11 ib. 988; 13 ib. 837; 14 ib. 198; 1 Paige, 637; 20 Johns. 554. It is also filed, so as to come within the provisions of the act providing for attachments in chancery, §§ 1 and 3 Pamph. Acts of 1846, 17.

14. If it be contended, that in this case we have no execution returned unsatisfied, we answer, that the equity of our bill is defensible on other and distinct grounds. Jeremiah Watts had fraudulently disposed of his entire estate, and the property had been carried beyond the jurisdiction of the court. The assets were in money, and were in the hands of Thomas J. Watts, the executor *de son tort*. Jeremiah Watts was dead. No administration on his estate had been taken out, and none was necessary. The power of the chancellor was needed to vacate the fraudulent bill of sale, and discover the assets, and make them available. Being in possession of the case for this purpose, the court of chancery will retain it, and do complete justice. See Chamberlayne v. Temple, *supra*, and other authorities.

15. The answer and the proofs show, that Mrs. West and the other sureties were utterly insolvent. Hence, no proceedings against them were necessary.

16. It cannot be necessary to make the other distributees of Jeremiah Watts parties. No effort is made to separate the shares of the distributees; and hence no account between them is necessary. We proceed against them as executors, and seek to charge them as having in their hands assets of the said Jeremiah Watts.

17. The decree of the Orphans' Court of Butler, which is the foundation of this proceeding, and all that precedes it is regular, as has been determined in the case of Clarke v. West, 5 Ala. Rep. 117. That decision, so far as it goes, is the law of this case.

GOLDTHWAITE, J.—This is not a case where a creditor seeks to obtain satisfaction of his debt out of the property of the defendant which cannot be reached by an execution at law, in which case, the right of the creditor to obtain relief, depends upon the fact of his having first exhausted his legal remedies, without being able to obtain a satisfaction of his judgment, (Hadden v. Spadder, 20 John. 554; Beck v. Burdett, 1 Paige, 388; Roper v. McCook, 7 Ala. 319.) Neither is it the main object of the bill, to remove an obstacle which stands in the path of the complainant in enforcing a lien, in which case he must, in order to entitle himself to the aid of equity, show himself to be a creditor with a lien, by obtaining judgment, and placing his execution in the hands of an officer. (Planters' and Merchants' Bank v. Walker, 7 Ala. 926; Dargan v. Waring, 11 Ala. 928; Pharis v. Leachman, at the present term.) The object of the complainant in the present case is, to enforce a claim against property which, it is alleged, has been fraudulently conveyed by an intestate in his life-time, and which is in the possession of a person who cannot administer it as the rightful representative, being bound by the fraud of his intestate, (Marler v. Marler, 6 Ala. 367; Pharis v. Leachman, *supra*) and which is the only property that remains for the satisfaction of the debt, the intestate having left no assets. The principle which is asserted by the bill, that a creditor may come into a court of chancery against

the personal representative, was asserted at an early period in the English courts, (1 Story's Eq. §§ 530, 546, and cases therein cited) and has been frequently recognized in this court; (Leavins v. Butler. 8 Port. 380; Blakey v. Blakey, 9 Ala. 391; Dement v. Boggess, 13 Ala. 140; Hunley v. Hunley, 15 Ala. 91;) and the principle applies equally to an executor in his own wrong, as to the rightful administrator. (Chamberlayne v. Temple, 2 Ran. 384; Hansford v. Elliott, 9 Leigh, 79; Newland v. Champion, 1 Ves. 105; Pharis v. Leachman, *supra.*) As it was not necessary for the creditor to have exhausted his legal remedies, or to stand as a creditor with a lien, in order to entitle himself to the assistance of a court of chancery, the allegation of the issue of the execution, and the return of no property upon the execution, was, for either of these purposes, entirely unnecessary, and need not be proved.

As to the other questions presented by the demurrer to the bill, it is true, that, as a general rule, to maintain a suit in equity on an administrator's bond, all the obligors must be made parties, (Moore v. Armstrong, 9 Port. 679); and a demurrer would lie on this ground, unless a sufficient excuse is shown in the bill for the omission. The allegation, however, in the bill, is equivalent to a charge of insolvency, as against all the other parties; and the objection on this ground cannot, therefore, prevail. Neither is it necessary, in a bill of this character, to make the distributees parties. In the case of Hartley v. Bloodgood, to which we have been referred by the counsel for the plaintiffs in error, the object of the bill was, to subject the share of a distributee to the payment of a creditor; and it was there correctly held, that the proceedings being directed against the distributee, as such, the other distributees were directly affected, and should have been brought before the court. The case of a creditor pursuing the personal assets is, perhaps, an exception to the rule; but be this as it may, it is well settled, both in England and this country, that in such case, the complainant may stop short at the personal representative. (Hollord v. Prior, 1 Mylne & Keene, 237; 7 Eng. Con. Ch. R. 22; Newland v. Champion, *supra;* Wiser v. Blackley, 1 John. Ch. R. 437; Story's Eq. Pl. 100, note 2.) If such be the rule as against the personal assets of the estate,

*a fortiori* must it prevail where the object of the bill is, to reach property fraudulently conveyed by the intestate, and to which the distributee can have no claim as such, being bound by the fraud of his intestate.

As to the decree of the Orphans' Court against the administratrix, no personal notice was necessary, and, in the absence of fraud, the decree must be regarded as conclusive. By the report of insolvency the court acquired jurisdiction, and after that time the administrator is considered as the actor, and held to notice of all subsequent proceedings. (Clarke v. West, 5 Ala. 117; Caruthers v. Ross, 18 Ala. 110.) The judgment being conclusive against the administratrix, the rule is, that it is equally so against the securities, who, in the absence of fraud, cannot litigate any questions, except those which may arise upon the *factum* of the bond, or its legal sufficiency. (Williamson v. Howell, 4 Ala. 693; McClure v. Colclough, 5 Ala. 65; Perkins v. Moore, 16 Ala. 10; Lamkin v. Heyer, 19 Ala. 228.) And the decree is conclusive, not only as to the demand of the plaintiff, but equally so as to the assets in the hands of the administrator. This result follows necessarily, from the decision in Clarke v. West, and Caruthers v. Ross, *supra*, holding that the effect of the report of insolvency, under the laws in force prior to the act of 1843, was, to divest courts of law of the jurisdiction of suits against the administrator, and confer upon the Orphans' Court the power to make distribution of the assets amongst the creditors. This power renders it necessary for the court to ascertain and determine the assets, as well as the demand; and the judgment of the court is equally conclusive upon each of these subjects.

It is, however, insisted, that the intestate Jeremiah Watts was not concluded by the decree of the Orphans' Court; that, if living, he could have claimed the protection of a Court of Chancery, for the purpose of letting in a defence, which he was prevented from setting up at the time of its rendition by accident, as well as mental derangement, with which disease he was at that time afflicted. The rule allowing parties to appeal to chancery against a judgment in another court, is of great strictness and inflexibility, and it is necessary that it should be so, as otherwise, the jurisdiction of that court would
52

soon supplant that of all other tribunals. (French v. Garner, 7 Port. 459.) A court of equity, therefore, will not lend its aid, unless the party claiming its assistance can impeach the judgment by facts, or on grounds, of which he could not have availed himself, or was prevented from doing it, by fraud or accident, or the act of the opposite party, unmixed with negligence or fault on his own part. Duncan v. Lyon, 3 John. Ch. 351; French v. Garner, *supra.*

The ground of accident relied on in the present case is, that Jeremiah Watts employed an attorney to attend to, and represent his interests on the final settlement of the estate of Henry West, and that instead of representing his interests, he, on that occasion, represented the claim of the defendants in error. Waiving the question as to whether the defendants could set up these facts in their answer by way of defence to the bill, or whether they should not have overhauled the judgment by filing a cross bill, we are clear, that the proof to sustain this allegation is not sufficient to bring it within the rules before referred to. The only diligence which is shown by the record to have been used by the intestate, was the speaking to an attorney, to attend to any and all business which he might have in any court. No definite instructions as to the defence were given—no particular case even mentioned—and it would not, we apprehend, be contended, that a Court of Chancery, upon this evidence alone, would, in the failure of the attorney thus employed to attend, be authorized to overhaul the judgment. To allow this, would be to encourage inattention and neglect on the part of the client, a cause which should furnish no ground for relief. Bateman v. Willoe, 1 Sch. & Le. 201.

In relation to the other ground upon which the opening of the judgment of the Orphans' Court is urged, it may be remarked, that the evidence of but one witness is relied on, and standing by itself, we do not consider the testimony of this witness as amounting to full proof of any actual or positive derangement, until after the severe illness with which Mr. Watts was affected in July, 1842, after the rendition of the decree. He speaks, it is true, of his mind being affected in the year 1839, or 1840, so as to incapacitate him from any *great* mental exertion, and from attention to important busi-

ness, but leaves us entirely in doubt as to the real extent to which his faculties were impaired. It is also rather singular, that this witness does not state a single fact upon which his opinion is based, except the failure of his memory, which is incidentally alluded to. We, of course, would not be understood as intimating that it is necessary, in every case, to give the facts upon which a professional opinion is founded; but in cases of this character, it is more satisfactory to do so. That his memory was impaired, is a circumstance by itself which is entitled to but little consideration, as this faculty is usually the first to feel the effects of age, and may frequently be seriously impaired, without materially weakening the powers of the judgment or understanding. Again: it devolved upon the plaintiffs in error to show clearly, that the condition of mind of their intestate was such as to reasonably account for his failing to make the defence. The person in relation to whom this proof is to be made, is a man of family, living for years in the community, and, during the whole of this time, managing his business, disposing of his property, not leading a secluded or isolated life, but, as far as we can form an opinion upon the whole testimony, occupying the relations to the neighborhood in which he resided which are usual with men of his position. It is incredible, that if the mind of a person thus circumstanced had been seriously affected for any length of time, it would not have been generally known in the community of which he was a member; and that but one witness is introduced to prove a fact of peculiar character—a fact which must, if it existed, have been known to other witnesses—is of itself entitled to great weight. Without, however, pursuing this subject further, it is sufficient to observe, that, taking into consideration all the evidence upon this point, it leaves the question at issue involved in too much doubt and uncertainty, and produces no conviction on the mind, that the failure to prepare and make the defence was attributable to the causes assigned by the plaintiffs in error.

No just reason, therefore, appearing upon the record, to authorize the letting in of the defence to the judgment, and the same being conclusive, not only against the administratrix of Henry West, but also against her securities, and the

proof upon the other points being full, the decree of the Chancellor must be affirmed, with costs.