# Bowden *v.* Perdue.

### *Bill to Correct the Errors of a Court of Probate.*

1. *Irregularities in judicial proceedings will not authorize the interference of courts of equity.*—Irregularities in judicial proceedings, or the errors of courts of competent jurisdiction, can not create an equity which will justify the interference of a court of equity.

2. *The wrong must occur without fault of the complainant.*—The court may be satisfied that injustice has been done, but the unvarying condition precedent to its interference, is the clear demonstration that the wrong occurred without *fault* or *negligence* of the complainant.

3. *The want of diligence destroys the claim to equitable relief.*—The want of diligence, on the part of the complainant, is as fatal to any claim for equitable relief under the statute as under the rule, defining the original jurisdiction of a court of equity.

4. *Errors in judicial proceedings must be corrected by an appeal.*—A party who has had his day in court, has fully presented his evidence, and on it the court has pronounced judgment, if error intervene, must correct it on appeal.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. HURIOSCO AUSTILL.

Lillie M. Bowden, an infant, filed by her next friend, Jesse Bowden, a bill of complaint in the Chancery Court of Butler county, to correct the errors committed by the Court of Probate of the said county, in the settlement of her guardian.

The bill alleges that Lillie M. Bowden is the daughter of Bennett Bowden, who is dead; and that she inherited from her father both real and personal property.

The Probate Court of Butler county, about the first day of January, 1865, appointed W. B. Bowden her guardian, who acted as such till August 5th, 1869, when he resigned, .and made a final settlement of his guardianship. Afterwards one James H. Perdue, who was the sheriff of the said ·county, " was, as such sheriff, duly appointed guardian of the complainant on or about August 5th, 1869; and, accepting the trust, he received from W. B. Bowden, her former .guardian, about the sum of six hundred and fifty dollars, and also two hundred and eighty acres of land, lying in Butler county." On the 27th day of February, 1871, said Perdue made an annual settlement of his guardianship. It was ascer-

tained that he had in his possession six hundred and sixty-six dollars belonging to the complainant. On the same day he lent to one J. M. Sutherlin, then engaged in business as a banker in the city of Greenville, the said sum, without any security, as appears from the following certificate of deposit:

"Greenville, Ala., February 17th, 1871. Received from J. H. Perdue, Esq., guardian of Lilly Bowden, six hundred and sixty-six 1-100 dollars, subject to his order, upon return of this certificate, bearing interest from date at the rate of eight per cent. per annum."

The said Perdue, on the 22d day of November, 1871, collected one hundred and eighty 50-100 dollars, as rent for her said land, and on the same day lent it to J. M. Sutherlin & Co., bankers in the city of Greenville, and received a certificate of deposit similar to that already mentioned. For the payment of these loans he neither required nor took any security.

In the early part of the year 1872, J. M. Sutherlin & Co. were adjudged bankrupts, and on an annual settlement made by Perdue, as guardian, on the 4th day of June, 1873, he was allowed a credit of eight hundred and forty-six 51-100 dollars, the amount of the said certificate of deposit.

On this settlement the complainant was represented by a guardian *ad litem*, duly appointed by the Court of Probate. He objected to the allowance of the credit, but his objection was overruled by the court.

The said Perdue continued to act as guardian of the complainant till January 1st, 1874, when he resigned. He made a final settlement of his guardianship on the 27th day of the following March. At that time the complainant was represented by a guardian *ad litem* "who moved said Probate Court to correct said annual settlement of June 4th, 1873, by striking therefrom the credit of eight hundred and forty-six 51-100 dollars, and charging said Perdue with interest on the said sum from the dates of each of said certificates." Evidence was introduced tending to show the negligence of the said Perdue; but "the court overruled the motion and refused to correct the said account, or to charge said Perdue with the said sum and interest thereon."

The bill alleged that the complainant was of tender years, resided in Memphis, in the State of Tennessee, "and having no one to represent her interest except the *guardian ad litem*, she was unable to take an appeal to the Supreme Court from the decree rendered on said settlement."

The bill prayed that on the final hearing, "the court would

set aside the allowance of the credit by the Court of Probate as erroneous, and would render a decree charging the said Perdue with the said amount with interest thereon, and that the said account on the final settlement be restated," &c.

The defendant, James H. Perdue, demurred to the bill of complaint on the following, among other grounds, viz:

"That it appears from said bill of complaint, the complainant is not entitled to the relief prayed for against this defendant, and that said complainant is not without fault or neglect in the settlement made before the Probate Court of Butler county, Alabama, and which she now seeks to revise."

On the final hearing, the court sustained the foregoing ground of demurrer, and overruled the other causes of demurrer assigned by defendant, and dismissed the bill of complaint.

HERBERT & BUELL, for appellant.—1. Appellant is entitled to relief under Revised Code, §§ 2451, 2274. The sole question in this case is whether or not the failure to appeal from the decree of the Probate Court within the time prescribed by law is such a failure or neglect as will bar the appellant from her remedy under the statute.

2. The remedy being strictly one of statutory creation, effect must be given to the intention of the legislators as far as possible, without violence to the language of the statutes. The legislature provided two remedies for the correction of errors in the Probate Court: the broad remedy of appeal to the Supreme Court, open to all; and that of a bill in chancery, restricted to him who can complain without fault or neglect.

3. If the operation of the statute should be limited by the law of appeals to the six months allowed in section 2244 of the Revised Code, it would be a good ground of demurrer that the complainant had an adequate remedy at law by appeal. The effect of which would be to divest chancery entirely of the power conferred by the statute. The injured party could not go into chancery within six months because of the remedy by appeal; nor after six months because of his failure to appeal.

4. The statute extends the powers of the courts of chancery. It had an inherent original jurisdiction of fraud, and the correction of mistakes of fact. It could take no cognizance of errors of law. But this statute gives this power in certain cases. Errors of law must always appear on the record, and it is presumed parties to a cause know the

[Bowden v. Perdue.]

law, and hence is to be informed of the error. Then, knowing the law and the error of the court, they must also know their right to appeal. If failure to appeal operates as a bar, then courts of chancery can take no cognizance of errors of law, and the statute is nugatory.

5. The language of the statute is simple, and clearly indicates that "the fault or neglect of the party injured," must have caused or contributed to the error of law or fact in order to bar him of the remedy provided therein. The fault or neglect must have occurred before his right of appeal accrued, and not afterwards. And hence failure to appeal can not be such fault or neglect. In this case no such fault or neglect of the appellant is shown. She appeared at the hearing of the cause by guardian *ad litem*, and contested the allowance of the credits in controversy. The attention of the court was called to the error at the time, and was caused by no fault of appellant, nor contributed to by her negligence.

GAMBLE & BOLLING, for appellees.—1. The bill shows the matters alleged in it were fully investigated in the Probate Court, and there is no averment in the bill of special circumstances which prevented the appellant from urging the matters relied on for relief, or of appealing from the decree of the Probate Court; nor is there any averment of fraud on the part of Perdue, or of accident, or mistake by the appellant, or those representing her, prejudicial to her rights in any way; nor that there has been newly discovered evidence. Without some of these allegations and facts we insist the court of equity is not authorized to interfere to grant relief.

2. The jurisdiction of the Court of Probate having rightfully attached, its decree on final settlement is of equal dignity and conclusiveness as to parties and privies as the judgments or decrees of any other court of law or equity. *Waring v. Lewis*, 53 Ala. 615, and authorities cited—and this case decides the one now before the court.

BRICKELL, C. J.—The bill is filed for the correction of errors committed by the Court of Probate, on the final settlement of a guardianship. It is not averred that by accident, mistake, surprise, or fraud, or by any act of the guardian, the ward, now complaining, could not have had in the Court of Probate, the full benefit of every fact now relied on as a ground of equitable interference. On the contrary, it is averred these facts were introduced in evidence, and the

VOL. LIX.

[Bowden v. Perdue.]

court exercising its proper jurisdiction, adjudged they were insufficient to charge the guardian for moneys he had loaned without taking security for their repayment, which were eventually lost. It is apparent the court erred, and it is to be regretted that any court should have fallen into such gross error, working such grievous injury. Irregularities in judicial proceedings, or the errors of courts of competent jurisdiction, can not create an equity, which will justify the interference of a court of equity.—High on Inj. § 130. Judgments at law, sentences of courts of exclusive jurisdiction, or decrees of courts of jurisdiction concurrent with that of a court of equity, are of the same finality and conclusiveness in equity, as at law. Injustice may have been done—the court may have misconceived or misapplied the law—the jury may have erred in judging, or disregarded the facts, a court of equity can not intervene merely to revise and correct the error. In *Duckworth v. Duckworth*, 35 Ala. 73, it was said, relief being sought in equity, against a decree of the Court of Probate: "No rule is better established, than that a court of chancery will not relieve in regard to a matter as to which the complainant could have had redress in a previous litigation, unless he was prevented from obtaining it, by accident, fraud, or the act of the opposite party, *unmixed with fault or negligence on his part.*" In *Watts v. Gayle*, 20 Ala. 825, it was said by GOLDTHWAITE, J.: "The rule allowing parties to appeal to chancery against a judgment in another court is of great strictness and inflexibility, and it is necessary that it should be so, as otherwise the jurisdiction of that court would supplant that of the other tribunals." There is no part of its acknowledged jurisdiction, a court of equity has so cautiously and sparingly exercised, as that of interference with judgments at law, or the sentences and decrees of other tribunals of competent jurisdiction, restraining their execution, or reopening the litigation they involved. The conscience of the court may be satisfied that injustice has been done—that the judgment or decree has not declared and enforced, but has defeated the right—the unvarying condition precedent to its interference, is, that it must clearly appear, the wrong occurred without *fault or negligence on the part of the party complaining.* Quieting litigation, silencing controversies, in the policy of that court is of more importance, than that justice may be done in every case.—*Bateman v. Willor*, 1 Sch. & Lef. 204.

The argument of counsel seems to admit that the bill does not present a case within the original jurisdiction of a court

[Bowden v. Perdue.]

of equity, but it is insisted that it may be supported as a bill for the correction of errors of law or fact occurring in a settlement in the court of probate under the statute.—(R. C. §§ 2274 and 2451.)   These statutes do not authorize the interference of a court of equity, unless the party complaining, shows that the error, whether it be of law or of fact, of which he complains, occurred without fault or neglect on his part. The statute may enlarge the jurisdiction of a court of equity, authorizing it to intervene for the correction of errors at law, and may dispense with the inflexible rule, on which the original jurisdiction of a court of equity depends, that there must have been fraud, or accident, or surprise, or the intervention of the act of the opposite party, preventing the party complaining from obtaining redress in the previous litigation. While dispensing with these, it does not dispense with the other condition that the party seeking to reopen the decrees of the court of probate, shall show that the error of which he complains occurred without his fault or negligence.— *Otis v. Dargan*, 53 Ala. 178; *Boswell v. Townsend*, 57 Ala. 308. His want of diligence, is as fatal to any claim for equitable relief, under the statute, as under the rule defining the original jurisdiction of a court of equity.   The bill affirmatively discloses, that on the final settlement in the court of probate, the complainant was represented by a guardian *ad litem*, who insisted the guardian should be charged with the moneys he had loaned without taking security.   Every fact stated in the bill was shown to the court of probate, and the court improperly adjudged the guardian should not be charged.   No exception was reserved to the ruling of the court, but there was full acquiescence in, and submission to the judgment rendered.   If there had been full knowledge of the facts, and the guardian *ad litem* had abstained from presenting them for the consideration of the court, not being hindered by the act of the opposite party, it would scarcely be said, the bill presented a case for relief under the statute—that the complainant could be acquitted of fault or neglect.   A party who has full opportunity, and yet from mere inattention or supineness, does not present his rights for adjudication to a proper tribunal, having jurisdiction of litigation involving them, closes the door to relief in equity.   Can he be acquitted of fault or neglect, if he appears, presents his cause, and submits to an adverse decision, not taking the steps necessary for its revision in an appellate tribunal?   What relieves him from the influence and operation of the maxim, *consensus tollit errorem?*   Of what avail is his appearance, and entering into

[Bowden v. Perdue.]

the litigation? If an appeal had been prosecuted from the decree, and every fact had been spread upon the record, which appears on the face of the bill, and affirmance of the decree, would have been inevitable, because no exception was reserved to the decision of the court. Was there not fault or negligence in the failure to reserve an exception; and how can it be said, the party failing to reserve it is free from fault or neglect. Fault and neglect is imputable, unless he intended submission to the judgment of the court; and if he submitted, that is as fatal as a want of diligence to any claim to equitable relief. We can not suppose the statute was intended to embrace a case of this character; but cases in which parties had not the opportunity of being heard in the court of probate, or of presenting their rights fully to that court. But a party who has had his day in court, has fully presented his evidence, and on it the court has pronounced judgment, if error intervenes must correct it on appeal. A construction of the statute, which would give it a larger operation, would practically abrogate the statute regulating appeals rendered by the court of probate on final settlements of executors or administrators, limited to six months, and would convert the equitable into an appellate jurisdiction. The statute limiting appeals from decrees of courts of probate, and the statutes which confer this equitable remedy, are parts of a common system, and that construction can not be just which would render them inharmonious in operation, or which would make each, serve the same purpose. An appeal is limited to six months—the equitable remedy to two years. Infants, married women, nor persons *non compos mentis,* are excepted from the limitation of appeals. These persons are excepted from the limitation of the equitable remedy, and are allowed two years after relief from disability to pursue it. If the appeal, and the bill in equity were regarded as concurrent remedies, it was useless to have limited appeals to six months, or to have subjected to the operation of the limitation, persons *sui juris,* excepted from the operation of the limitation of the equitable remedy. No party can invoke the equitable remedy who has had full opportunity to redress the error of which he complains, on appeal, and has by his own negligence lost the opportunity, and forfeited the right of appeal. The chancellor properly sustained the demurrer to the bill, and the decree is affirmed.

STONE, J., (dissenting.)—In the case of *Mack v. Cundiff,* 6 Por. 24, decided more than forty years ago, this court said

that "chancery will not relieve against a judgment at law, on the ground of its being contrary to equity, unless the defendant in the judgment was ignorant of the fact in question pending the suit, or it could not have been received as a defence, or, unless he was prevented from availing himself of it as a defence by fraud or accident, or the act of the opposite party, unmixed with negligence or fault on his part." In *French v. Garner*, 7 Por. 549, the same doctrine was affirmed; and it has been reiterated by this court so often, in a series of decisions running all through the judicial history of this State, that I deem it unnecessary to cite them.—See 1 Brick. Dig. 666, § 376.

This principle did not originate in this court. It was borrowed from the English Chancery system, and was copied from a decree of Chancellor KENT, who, like our predecessors, found the doctrine ready moulded and established for his use.—See *Foster v. Wood*, 6 Johns. Ch. 87; *Lansing v. Eddy*, 1 id. 51. It did not pertain to the original, inherent powers of the court; but was engrafted upon its jurisdiction upon that principle, now long recognized, which is included in the general phrase, the prevention of irreparable mischief. Hence, to bring himself within its remedial influence, the party invoking its exercise must show, in fact, that he has a legal right, that he has failed to obtain it by no fault or neglect on his part, and that without the aid of the Chancery Court he is without remedy. The slightest inattention, or want of active diligence, which, if timely exercised, would have averted the wrong, has, in such cases, been always held to be fatal to the relief prayed; because, such inattention or want of active diligence disproved the great underlying averment, that the injury done was without fault or neglect on the part of complainant. The jurisdiction being exceptional, the party asking its exercise must bring himself clearly within its scope.

This conservative, healing principle, so necessary for the prevention of wrongs which sometimes, through fraud of parties, or accident without fault or neglect, have found expression in the solemn judgments of the purest and most elevated judicial minds, has been applied for their correction to the judgments of courts of the highest, as well as the lowest jurisdiction, when no other mode of redress could be administered. Judicial necessity gave it its birth, and it defines the boundaries of its domain.

The principles we have declared above were made a part of the statute law of this State, and the common law courts

were clothed with a qualified power to exercise them, in two of the most numerous classes of cases in which their exercise might become necessary.—See Code of 1852, section 2406 *et seq.;* Code of 1876, section 3159 *et seq.* This statutory remedy, like the equity principles above, only aids parties who have been prevented from making their defense, by surprise, accident, mistake or fraud, without fault on their part. Under this statute, it has been held, and rightly so, that a party, to avail himself of its benefits, must repel all imputation of fault, neglect, or inattention, in defending his suit in the first instance.—See *White v. Ryan,* 31 Ala. 400 ; *Shields v. Brown,* ib. 535 ; *Allington v. Tucker,* 38 Ala. 655 ; *Dothard v. Teague,* 40 Ala. 583 ; *Callahan v. Lott,* 42 Ala. 167 ; *Ex parte North,* 49 Ala. 385 ; *Martin v. Hudson,* 52 Ala. 279.

It will be observed that in the two forms of remedy discussed above, no error or fault of the judge by whom the judgment is rendered, enters into the consideration. Accident to the defendant, without his neglect, or fraud of the opposite party which he could not avert, one or the other, is the fundamental fact to entitle a party to relief, who having a meritorious defense, has been denied the means of making it. The remedy is directed and shaped to redress misfortunes of the suitor ; not the errors or faults of the judge. It concedes the judgment to be right on the facts presented, but claims that, without fault, the facts did not properly go before the court.

Section 3837 of the Code of 1876—the same as section 1915 of the Code of 1852—is as follows :

" Where any error of law or fact has occurred in the settlement of any estate of a decedent, to the injury of any party, without any fault or neglect on his part, such party may correct such error by bill in chancery, within two years after the final settlement thereof ; and the evidence filed in the Court of Probate, in relation to such settlement, must be received as evidence in the Court of Chancery, with such other evidence as may be adduced."

The first controlling thought which presents itself in contrasting the older equitable doctrine, first above considered, with the statute last above copied, is, that while the former principle furnishes redress of wrongs which have been inflicted on parties through their misfortune, without any charge of error or fault committed by the presiding judge, the latter only proposes to redress error committed by the judge or court.

Second : Under the older principle, errors of law are never

redressed; nor are errors of fact, as fact. The whole aim and scope of the latter are the redress of errors of law and fact.

Third: Under the former, mere cumulative evidence is worthless, and is disregarded. Under the latter it is expressly provided for and authorized.

Let us analyze this section 3837, and see if its language does not force us to adopt one construction only. It confers the right to resort to chancery within two years after final settlement, "when any error of law or fact has occurred in the settlement, to the injury of any party." Not a word said about reserving an exception, about a new trial, about appeal, or about fraud. The language is, when an error of law or fact occurs. Whose error? Necessarily the court's. And the redress is as ample when the court commits an error of law, as when it commits an error of fact. The errors need not be those procured by fraud, or which cannot be redressed on appeal. The statute contains no such limitation as this. There is, however, a limitation in the section. The redress extends only to such errors of law or fact as occur without fault or neglect on the part of the party seeking redress. That is, if the error of the court be one of law, then the party complaining must not have caused, or contributed to it, by his fault or neglect. So, if the error be one of fact. *Volenti non fit injuria.* The grammatical construction of this sentence, forces the mind to the conclusion that the legislature meant, and only meant, that the error of law or fact committed by the court, must not have resulted from the fault or neglect of the party who complains that he was aggrieved thereby. Anything beyond this can not be found in the statute. To me it seems a stretch of interpretation, either to add important words to, or take them from the plainly expressed language of the statute.

Another view is conclusive to my mind, that the opinion of my brothers is not the true construction of this section of the Code so humanely beneficent to the most defenceless classes in any community. If they are correct, all the remedial powers of section 3837 *supra*, had been in full exercise by the chancery courts of this State, from the dawn of our jurisprudence. Why provide by statute, and in a code of laws framed by legal gentlemen selected for their professional eminence, the identical remedy, and confine it to a class of cases in one named court, which was known and recognized everywhere as already existing, and applicable to all civil causes in every court of record in the State? And,

notably, why express this new grant of an old power, in language fundamentally dissimilar to that, in which we have all been accustomed to meet the legal principle which my brothers think the legislature intended to declare in the section of the Code under discussion? I submit the inquiry if the construction of my brothers does not leave section 3837 of the Code without any operation whatever.

Many of the judges of probate are unskilled in the law; and settlements, in that court, frequently pass through without thoughtful contestation, to the great damage of those entitled to share in the distribution. Hence the wisdom of providing a larger and more liberal system of revision of their decrees, than is considered necessary or safe as a general rule.

The cases of *Watts v. Gale*, 20 Ala. 817, and *Duckworth v. Duckworth*, 35 Ala. 70, cited by my brothers, should exert no influence in the construction of the section of the Code under discussion. The first of those cases was decided in 1852, before the statute became operative. The last makes no allusion to the statute, and contains no averment to bring the case within its influence. I think each of them as inapplicable to the case in hand, as is the leading case of *French v. Garner*.

I regret the necessity I feel myself under of dissenting from the views of my brothers; but I consider the question too important to be passed over in silence.