Owen, C. J.
In October, 1873, Milton W. Junkins was appointed guardian of the estates of two of his minor children. He gave bond, with Samuel Braiden, plaintiff in error, as surety, conditioned that his principal should “faithfully discharge all his duties as such guardian, as is required by law.”
He entered upon the discharge of his trust. A considerable sum of money belonging to his wards came into his hands as guardian, which he neglected to account for.
He thereafter died, and in Eebruary, 1880, D. W. Cooper was appointed his administrator, and in Eebruary, 1881, as such administrator, and as required by section 6291, Eevised Statutes, filed in the probate court of Belmont county an account of the doings of his intestate as such guardian. In June, 1881, the count passed upon this account and found that in his life-time the guardian, as such, had received of his wards’ money $953.48, which, with the interest thereon, amounted to the sum of $1,384.06, which was adjudged against the estate of the late guardian, and ordered to be paid by the administrator to the then and present guardian, the defendant in error. There being no assets in the hands of the administrator, the action below was brought in the court of common pleas by the present guardian of the wards, *340 against Braiden and the administrator of his principal upon the bond of the latter for the recovery of the amount found due from the estate of the guardian, and interest. To the petition, Braiden made answer as follows :
“ That the said Milton W. Junkins, as guardian, did not file any account of his trust as guardian; that the account filed by his administrator was filed without the knowledge of this defendant, and this defendant was no party thereto. The defendant further says,'that for many years prior to the death of the said Junkins, he, the said Junkins, was a man of intemperate habits; that he was for a very long time unable to work; that he had no real or personal estate, and no income except what he derived from his practice as a physician, when able to practice, and from an estate by curtesy he had in certain real estate; that at the time he was appointed guardian hisyvards were infants of tender years, requiring great care and attention; that they had in addition to the moneys claimed to have been received by their guardian the remainder in fee-simple of a piece of real estate in the city of Bellaire, Ohio, of the value of at least forty-five hundred ($4500) dollars; that while they were possessed of an estate as aforesaid, and their father and guardian unable to provide for himself, he, the guardian, did, at great cost to himself, support, clothe, and educate said children, and on them and in their behalf did expend large sums of money exceeding in the- aggregate the amount this defendant is sought to be charged with, and that the said real estate of said wards is still held and possessed by them free of incumbrance. The defendant, Samuel Braiden, further says, that for a long time previous to the death of the said Junkins, he, the said Junkins, was not in condition to transact business ; that on that account he did not, in his life-time, claim or ask an allowance for the maintenance of his wards, nor did his administrator for him in the final settlement of his accounts.
“ The defendant further says, that the said Juukius was entitled to an allowance for maintaining, clothing, and educating his wards; that his failure to do so was owing to *341 his condition as aforesaid ; and that said guardian was not in fact indebted to his wards in any sum at the time of his death, and that the said claim against him is not valid or equitable.”
The plaintiffs demurrer to this answer was sustained, the defendant excepted, and, on his failure to answer further, judgment was rendered against him for the amount demanded in the petition. The district court on error affirmed this judgment.
To reverse the judgments below the present proceeding is prosecuted.
If Braiden was entitled to the relief demanded in his answer, the judgments below are erroneous and should be reversed.
The single proposition to which we address our consideration is the right of Braiden to a review, in the action below, of the finding and order of the probate court upon the settlement of the guardian’s dealings by his administrator. Braiden was not made a party to, and it is assumed that he had no actual knowledge of, the settlement proceeding in the probate court. That the settlement was final as tween the wards and their guardian’s administrator, in the absence of an appeal from it or a proceeding to open it in accordance with the statutes, will be conceded. Section 6289, Revised Statutes; Woodmansie v. Woodmansie, 32 Ohio St. 18.
Whether a surety upon a guardian’s bond is concluded by a settlement in the probate court of his principal’s accounts has not, heretofore, been determined by this court. In State v. Humphreys, 7 Ohio (1 pt.) 224, it was held that an action against the sureties in a guardian’s bond was sustainable without previous liquidation of'the amount due from the principal. This case was explained in Newton v. Hammond, 38 Ohio St. 435, and the principle established that a right of action- against the sureties first accrues to the ward for the amount remaining in the hands of the guardian when such amount is ascertained by the *342 probate court on the settlement of the guardian’s final account. It is said in that case by Mcllvaine, J.: “ The statement of accounts in the probate court must be verified by the oath of the guardian-- — a requirement alike important to the sureties and the ward.” If the liability of the sureties is not fixed, nor they concluded, by the settlement, it is not apparent why the verification of the accounts is of equal importance to them and the wards.
The principle that a final settlement of a guardian’s accounts and the determination by the probate court of the amount due his wards should, in the absence of fraud and collusion, conclude the sureties in an action against them upon the guardian’s bond, finds strong support in both reason and authority. The sureties undertake that their principal will faithfully discharge his duties as guardian. Section 6259, Revised Statutes. With other duties the law requires him to render on oath to the proper court an account of his receipts and expenditures, verified by vouchers or proof, etc. ... At the expiration of his trust fully to account for and pay over to the proper person all of the estate remaining in his hands. ... To obey and perform all the orders and judgments of the proper courts touching the guardianship. Section 6269, Revised Statutes.
By their bond the sureties contract with reference to the action of a court and that their principal will obey its orders and conform to such action. Can they say they are strangers to such proceedings? Upon their principal’s failure to obey the orders of the court there is clearly a breach of the bond. The i-elation they assume to such court and its action so far makes them privy to the proceedings affecting their principal as to deny to them the right, when called upon to answer for the breach of the bond, to call in question the grounds upon which the court based its action, and to have the same cause retried. We find in our law numerous illustrations of this principle. The sureties in an undertaking in attachment contract to pay the defendant all damages sustained by reason of the *343 attachment if the order prove to have been wrongfully obtained. Has it ever been doubted that the determination by the court in the attachment proceeding that the order was wrongfully obtained concluded the sureties upon that question in an action upon their undertaking 1 By an undertaking in replevin the sureties contract that their principal will duly prosecute the action and pay all costs and damages which may be awarded against him. Nobody will claim that the award of damages in the replevin suit is not final against the sureties in an action against them upon the undertaking. An undertaking in an injunction proceeding is conditioned to secure the party enjoined the damages he may sustain if it be finally decided that the injunction ought not to have been granted. It has never been supposed that the sureties in an action against them could be heard to say that they were strangers to the injunction proceeding and that the decision of the court that the injunction ought not to have been granted should be disregarded and that question again litigated.
It is not easy to distinguish the principle involved in these proceedings from the °one we are considering.
Indeed it may well be considered an established principle that whenever a surety has contracted with reference to the conduct of one of the parties in some suit or proceeding in court, he is, in the absence of fraud and collusion, concluded by the judgment. Shepard v. Pebbles, 38 Wis. 373; Lothrop v. Southworth, 5 Mich. 436, 448; Towle v. Towle, 46 N. H. 434; Willey v. Paulk, 6 Conn. 74; Stovall v. Banks, 10 Wall. 588; Heard v. Lodge, 20 Pick. 58; Sturgis v. Knapp, 33 Vt. 521; Black v. Caruthers, 6 Humph. 87; Dowling v. Polack, 18 Cal. 625; Warner v. Matthews, 18 Ill. 86; Evans v. Commonwealth, 8 Watts (Pa.), 398; Garber v. Commonwealth, 7 Pa. St. 266; Watts v. Gayle, 20 Ala. 817; Casoni v. Jerome, 58 N. Y. 322; Douglass v Howland, 24 Wend. 35; Brandt Suretyship, §§ 533, 534.
This principle was applied in an action on an injunction *344 bond in Lathrop v. Southworth, 5 Mich. 448, where it was held that a surety was bound by a decree against his principal and could raise no question of its correctness. It was said in this ease that the surety undertook that his principal should abide the judgment of the court. “ He can, therefore, raise no question of the correctness of the decree, nor impeach it in this collateral proceeding.” The same holding was made in a similar case — Towle v. Towle, supra, where the court say: “By signing the bond in suit with Towle, the plaintiff in the suit in equity, the sureties voluntarily assumed such a connection with that suit that they are concluded by the decree in it in the present suit upon the bond so far as the same matters are in question.”
The supreme court of the United States applied the same rule to the sureties upon an administration bond, in Stovall v. Banks, 10 Wall. 583. It is there said that the surety “ can not attack collaterally a decree made against an administrator for whose fidelity to his trust he has bound himself.” The same application of this principle was made in Heard v. Lodge, 20 Pick. 58, where the court say: “ To most purposes, it seems to us, that the sureties in an administration bond are, as well as the principal, estopped from controverting the validity of a judgment ascertaining the amount of a debt to be paid by the administrator. They are, in many respects, like the sureties in a bail bond, and equally bound by the proceeding against the principal. The duty they have assumed is that the principal will pay on demand all debts ascertained by judgment of a court of law against him in his capacity as administrator, if the estate be solvent. His failure to make payment is a breach of the administration bond.” In the case of an administrator’s bond, the court say, in Casoni v. Jerome, 58 N. Y. 322: “ Sureties are bound by the decree of the surrogate in such a case, because by their contract they have made themselves privy to the proceedings' against their principal, and when the principal is concluded, *345 tbe surety, in the absence of fraud or collusion, is con-eluded.”
In Shepard v. Pebbles, 38 Wis. 373, it was held that the sureties on a guardian’s bond are concluded by the order of the county court on the guardian’s accounting, as to the amount due from him to the ward. Cole, J., said “The general rule of course is, that a judgment is conclusive only as against parties and privies ; but to this there are exceptions. And it is conceded that whenever the surety has contracted in reference to the conduct of one of the parties in some suit or proceeding in the courts, he is concluded by the judgment. ... In the case before us, the order of the county court fixed the amount of the proceeds of the sale in the hands of the guardian, and directed its payment to the ward. The sureties had contracted that the guardian should and would justly account for the proceeds, and dispose of them according to law, and would perform all orders of the county court by him to be performed. There was a breach of the obligation on the default of the guardian to pay over as he was ordered to do ; and the sureties, as well as the principal, are estopped from controverting the correctness of the order ascertaining the amount. They occupy, in many respects, a position like that of sureties in a replevin or bail bond, and are equally concluded by the proceedings against the principal.” The strong analogy of this case to the one at bar is apparent. The settlement by the administrator of the deceased guardian is the same in effect as if made by the guardian himself. Section 6291, Revised Statutes. The amount due the wards was ascertained by the court and its payment to the plaintiff below ordered. In this default has been made. No fraud or collusion is alleged in the settlement, but a rehearing of the matter of the account is asked, as if no settlement had been made.
The only case cited by the plaintiff in error to support the claim that the surety may be heard to have a new accounting and settlement, is Dawes v. Howard, 4 Mass. 97. This was an action of debt on a bond of a guardin, the *346 wards being minor children of the guardian. The guardian had made no claim in his life-time, but the court allows it to the sureties. There is no intimation in the report of the case that there ever had been a settlement of the guardian’s accounts prior to the action upon the bond. The/piestion we have considered was not suggested by court or counsel, and did not arise upon the record.
The more recent ease of Heard v. Lodge, 20 Pick. 58, supra, presents the view of the same court upou this question, and fully supports the conclusion we have reached, which, is, that m an action upon a guardian’s bond for the recovery of the amount found due the wards upon a final settlement of the guardian’s accounts in the probate court, the sureties are concluded by the settlement, and will not be heard, in the absence of fraud and collusion, to question its correctness or to demand a rehearing of the accounts. There was no error in sustaining the demurrer to the answer.

Judgment affirmed.